**UNITED STATES of America,**
**Plaintiff,**

v.

**2,457.85 ACRES OF LAND, etc., Tracts Nos. 201, 204, 207 and 302, Defendants.**

**Civ. A. No. 4141.**

United States District Court
S. D. Mississippi,
Jackson Division.

June 12, 1969.

Robert E. Hauberg, U. S. Atty., Jackson, Miss., for plaintiff.

John M. Grower and Timothy Jones (of Brunini, Everett, Grantham & Quin, Jackson, Miss.) W. J. Barbour, Henry, Barbour & Decell, Yazoo City, Miss., for defendants.

## OPINION OF THE COURT

DAN M. RUSSELL, Jr., District Judge.

At the request of the Secretary of the Army, this action was filed by the United States of America as an eminent domain proceeding authorized by pertinent statutes for the purpose of acquiring lands to provide for flood control in the Yazoo Basin Headwater Project, Mississippi. The Declaration of Taking was filed June 20, 1967, the estate taken being the fee simple title to the lands described therein, subject to certain existing easements, and excepting the minerals. No contest was made in this action of the government's statutory authority to condemn private property, the sole issue herein being the amount of just compensation due for Tracts Nos. 201, 204, 207, and 302, comprising 669 acres of an 875 acre Mississippi Delta farm owned by D. H. Dew, Jr. and wife. The defendants having waived a jury trial, the cause was tried to the Court.

On the date of the taking, the entire farm, including the above numbered tracts, was a contiguous unit lying partially in Yazoo County, but predominantly in Holmes County, Mississippi, one mile north of the small town of Eden, and approximately 12 miles north of Yazoo City. Access roads consist of a county road running east and west across the south portion of the farm, until it intersects with Highway 49–E, which runs in a northwesterly direction across the west portion of the farm. This highway is paralleled by the single tracks of the Illinois Central Railroad. Techeva Creek, parallel to and south of the county road, borders the farm to the south to a point where it crosses west under Highway 49–E and continues west through the farm. Several miles to the north is Black Creek flowing from the hills on the east in a westerly direction. On December 1, 1965 the first phase of the Hillside Floodway Levee, with the exception of openings left for drainage structures, was completed by the U.S. Engineers. This levee runs north and south in a northwesterly direction from the Dew farm. In February 1966, a crevasse occurred in the south bank of Black Creek to the north, and in times of heavy rains and floods, excess water, which, prior to the levee and the crevasse, flowed westerly and southwesterly, has since flowed southerly over the farms south of Black Creek which are in the project area including the Dew farm. There have been three instances of high water on the Dew property since the completion of the levee, one in February 1966, and in May 1967, and the third in July 1967, after the taking. No material crop damage was suffered by defendants, and no claim for any is appropriate here. The effect of the levee, as treated by the appraisers, is related hereafter.

A substantial portion of the Dew farm was for many years cleared, open land, and in use for agricultural production. From 1963 to 1966, as Dew acquired additional parcels, these were cleared and put into the production of soybeans, cotton and wheat. All appraisers agreed

that on the date of the taking, the highest and best use of the property was as a Delta farm for the production of the above named crops.

Through two qualified appraisers for the government, evidence was offered of just compensation for the land taken from the Dews, one appraisal being in the sum of $180,825.00, and the other in the sum of $198,350.00. Defendants' two expert witnesses were considerably higher in their appraisals.

The high government appraisal was presented as follows:

### VALUE BEFORE THE TAKING

| | |
|---|---:|
| 250 acres Falaya @ $325.00 per acre | $ 81,250.00 |
| 207 acres mixed Alluvial @ $280.00 per acre | 57,960.00 |
| 348 acres mixed and heavy @ $265.00 per acre | 92,220.00 |
| 55.28 acres woodland @ $100.00 per acre | 5,528.00 |
| 15.00 acres roads, ditches, etc. @ $5.00 per acre | 75.00 |
| 857.28 Acres | $237,033.00 |

Cotton Allotment:

| | |
|---|---:|
| 74 acres @ $327.00 per acre | $24,198.00 |

Improvements:

| | |
|---|---:|
| Tenant houses, etc. | $17,100.00 |
| Total Value Before Taking | $278,331.00 |
| (Rounded to) | $278,350.00 |

### VALUE AFTER TAKING

| | |
|---|---:|
| 75 acres Falaya @ $325.00 per acre | $ 24,375.00 |
| 80 acres mixed Alluvial @ $280.00 per acre | 22,400.00 |
| 41 acres heavy woods @ $100.00 per acre | 4,100.00 |
| 10 acres roads, ditches, etc. @ $5.00 per acre | 50.00 |
| 206 Total acres | $ 50,925.00 |

Cotton Allotment:

| | |
|---|---:|
| 74 acres @ $237.00 per acre | $ 24,198.00 |

Improvements:

| | | |
|---|---:|---:|
| 1 good frame house | $4,000.00 | |
| 1 poor tenant house | 700.00 | $ 4,700.00 |
| Value after taking | | $ 79,823.00 |
| (Rounded to) | | $ 80,000.00 |
| Just Compensation | | $198,350.00 |

The high appraisal for defendants is as follows:

### VALUE BEFORE THE TAKING

| | |
|---|---:|
| 840.28 acres Delta cropland @ $450.00 per acre | $378,126.00 |
| 35.00 acres bayous, creeks and woods @ $50.00 per acre | 1,750.00 |
| Total land | $379,876.00 |

| | |
|---|---:|
| Improvements: | $ 12,961.00 |
| Total Value Before Taking | $392,837.00 |
| (Rounded to) | $393,000.00 |

VALUE AFTER TAKING

Land

| | | |
|---|---|---|
| 15 acres bayous, creeks and woods @ $50.00 per acre | $ | 750.00 |
| 191 acres Delta cropland @ $375.00 per acre | $ | 71,625.00 |
| 206 Total Acres | $ | 72,375.00 |
| Improvements: | | 661.00 |
| Total Value After Taking | $ | 73,036.00 |
| (Rounded to) | $ | 73,000.00 |
| Just Compensation "As Is" | | $320,000.00 |
| Just Compensation without levee influence—649.28 cropland @ $50.00 per acre—$32,464.00 (rounded to) | | 32,000.00 |
| Just Compensation as though levee had not been built | | $352,000.00 |

The appraisers for both parties claimed to have personally inspected the Dew farm numerous times, and to have examined the topography and soil; they identified the various parts of the farm, as to croplands and woodlands, including those portions taken and the remainders, from aerial photographs, and offered comparable sales in the area, adjustments to which they made in arriving at the values of acreage and improvements on the Dew farm.

From the figures shown above, the appraisals differed not only in the amounts of acreage devoted to cropland as distinguished from woodlands and waste, but also materially differed in the separate values given to cropland. Of the entire 875 acre tract, the government allotted 805 acres to cropland, 55 acres to woodland and 15 acres to roads and ditches. After the taking and as to the remainder, the government allotted 155 acres to cropland, 41 acres to woodland and 10 acres to roads and ditches. Defendants, before the taking, claimed 840 acres of cropland and 35 acres of bayous, creeks and woods. After the taking, the defendants characterized the remainder as 191 acres of cropland and 15 acres of bayous, creeks and woods. As all appraisers agreed that the highest and best use of subject land is as cropland, the Court finds defendants'.designations of the number of acres of cropland before and after the taking more acceptable for the purpose of determining just compensation.

In determining the per acreage value of the farm, the appraisers for both sides relied on comparable sales. In relating these sales to subject property, the appraisers differed in their consideration of at least two factors. First the government appraisers stated they were aware of the completion of the first phase of the Hillside Floodway Levee in 1966, but, as of the date of taking, found it had no adverse effect on the value of defendants' land. As opposed to this, defendants' appraisal added $50.00 per acre for 649.28 acres, claimed to be affected by flood waters since the completion of the levee, for a total fair market value of the farm as though the levee had not been built. The overwhelming evidence was that, with the opening in 1962 of an auxiliary channel south of the Dew property feeding into the Yazoo River, and with the drainage ditches which Dew had opened and improved on his farm, he had no excess surface water until 1966 when the Black Creek crevassed, this occurring after the completion of the levee. Since February 1966, there have been three occasions of flooding following heavy rains, twice before the taking, and once after. The fact that no crops were in the fields to be damaged, and no claim for damage to crops is made, does not preclude the conclusion that this land was damaged, to

some extent as to its marketability, by becoming a part of the floodway before the actual date of condemnation and that such damage was caused by plaintiff. Although just compensation is to be adjudged as of the date of taking, it is only fair that the Dew property be given its fair value as though the levee had not been constructed. Without accepting the adjustment to the extent claimed by defendant, the Court does take this factor into consideration in its subsequent finding of the value per acre of the cropland involved.

Secondly, cotton allotments were valued differently. Under the federal agricultural subsidy programs, cotton farms in the Delta are eligible for cotton allotments. By agency formulas, the allotments are based on projected yields determined in turn from past yields. There was considerable evidence in the record of Mr. Dew's achievements as an outstanding farmer with high productivity in cotton and soybeans, with some of his acreage being "double cropped." In 1965, he had a cotton yield of 1330 pounds per acre, 1150 pounds in 1966, and 1025 pounds in 1967, all relatively good yields. He had a cotton allotment on 74 acres. Under the subsidy program, this cotton allotment is transferable. For purposes of appraisement, the government treated it as personal property, with a value to the farm as a whole. However, because it is transferable and may be disposed of by the owner, the government added its value to the remainder, thus in effect reducing the value of the land taken. The government appraisal, as shown above, gave a value per acre to the various kinds of land, and added a separate value to the cotton allotment of $24,198.00, this sum being arrived at by multiplying 30¢ per pound by a projected yield of 1090 pounds per acre for an average value of $327.00 per acre, or a total of $24,198.00 for 74 acres.

In its comparable sales the government showed three sales which involved no cotton allotments, with cleared land being valued at $250.00 per acre, $200.00 per acre and $235.00 per acre. In those sales involving cotton allotments, the government's analysis gave acreage values ranging from as low as $75.00 per acre to as high as $325.00 per acre, but found cotton allotment values ranging from $350.00 per acre to as high as $600.00 an acre, these last, with one exception, being on acreage with a much lower projected yield than the Dew acreage. But for the exception, the allocation of values to crop allotments in the government's comparable sales are incompatible to Dew's yield and must be rejected. On the one exception, where the government, in its analysis, attributed a cotton allotment value of $600.00 per acre on 136.5 acres with a projected yield of 1275 pounds per acre, it at least gave separate value to all the cropland, consisting of 567 acres, of $325.00 per acre. This is the highest value given to any of the Dew acreage, and that to only 250 acres, and without any adjustment for the condition created by the levee. Analyzing the above noted comparable sale further, and using the government's values, it is readily seen that by combining the value of the cotton allotment, $81,900.00, with the value of the 567 acres of cropland, $184,275.00, there is a combined average value of the cropland in the sum of $470.00 per acre, while only allowing to the 805 acres of Dew cropland a combined average of $318.00 per acre.

■ On the other hand, defendants' appraisal contains no separate valuation for the cotton allotment, the appraiser treating it as a contributory factor to the value of the whole farm. On his comparable sales, in which cotton allotments were involved, the overall values per acre ranged from $394.00 to $574.00. In his relation of these values to the Dew farm, his adjustment factors, including a consideration of cropland acreage, timberland acreage, improvements and cotton allotments, established an overall range of $440.00 to $489.00 per acre. This figure includes the value of cotton allotments and improvements,

which the government treated separately; nor does defendants' appraisal reflect any cotton allotment value remaining to defendants. Defendants' appraiser detailed the method by which he undertook to determine the value of cotton allotments, indicating that their value depended upon an uncertain market rather than any fixed formula agreed upon between a purchaser and a seller. He did agree that were he to compute the value of Dew's allotment as a separate item, it would be based on 20¢ per pound multiplied by the projected yield and number of acres, which, when calculated, comes to $16,132.00. This amount the Court finds reasonable, and finds should be added to defendants' total value and to the remainder after the taking.

Correcting the government's estimate of Dew's cropland to 840 acres, and using the government's top value for this land of $325.00 per acre, combined with the government's estimate of the value of Dew's cotton allotment results in an average per acre of $353.00, exclusive of improvements. Similarly, taking defendant's appraisal of 840 acres at $450.00 per acre, and reducing the amount by $16,132.00, which the Court finds a reasonable value for the cotton allotment, results in an average per acre of $430.00. With no other factors considered, and not including the cotton allotment, the true value of Dew's cotton acreage obviously lies between $325.00 and $430.00 per acre. Comparing these figures with other comparable sales, the high productivity of Dew's land, and the fact that it should be appraised as though no levee had been constructed, the Court finds that a reasonable value of the cropland of the Dew farm is $390.00 per acre, exclusive of cotton allotment.

Hence the Court finds the value as of date of taking to be as follows:

Land

| 840 acres of Delta cropland @ $390.00 per acre | $327,600.00 |
| 35 acres of bayous, creeks and woods @ $50.00 per acre | 1,750.00 |
| Total land | $329,350.00 |

Improvements:

| Total value | 17,100.00 |

Cotton Allotment:

| 74 acres @ $218.00 (20¢ x 1090 lbs.) | 16,132.00 |
| Total Before Taking | $362,582.00 |

As to the remainder, again the government and defendants' appraisers differed as to the value of the cropland. Of the 206 acres remaining, the government allotted 155 acres to cropland at the same per acreage value as before the taking, allowing no severance damage. Of the balance, 41 acres were designated woodlands with no change in value per acre and 10 acres designated as waste at the same value per acre. Defendants, consistent with their estimate of crop acreage before the taking, designated 191 acres of the remainder as cropland, reducing their value per acre to $375.00 after the taking, with the balance of 15 acres of woods and wasteland at the same acreage value claimed before the taking. The government appraisers, in giving no adjustment for severance damage expressed the opinion that the cropland remaining was of better soil, and was sufficient as an economically feasible farm unit. The Court disagrees. Aerial photos of the entire farm with an overlay reflecting the location of the remaining acreage shows it to be divided into two sharply, angulated parcels, separated by a mile or more, one parcel divided by Techeva Creek, and the other divided by the creek, Highway 49–E and the railroad. Under one operation, this

separation would require the constant movement of farm machinery, for more than a mile each way, with loss of space in the angulations too narrow for row machinery to operate in. Additionally, defendants offered evidence to the effect that any farm of less than 500 acres is not as economically feasible to operate as one of more acreage, all of which the Court finds persuasive, and further finds that such severance damage reduces the value of remaining crop acreage to $325.00 per acre.

Accordingly, the Court finds the value of the remainder, after the taking, together with the value of just compensation to defendants for the land taken as set out below:

Land:

| | |
|---|---|
| 191 acres of Delta cropland @ $325.00 per acre | $ 62,075.00 |
| 15 acres of bayous, creeks and woods @ $50.00 per acre | 750.00 |
| Total | $ 62,825.00 |
| Improvements: | 4,700.00 |
| Cotton Allotment: | 16,132.00 |
| Total after the taking | $ 83,657.00 |
| Just compensation before the take | $362,582.00 |
| Just compensation after the take | 83,657.00 |
| Just compensation for that taken | $278,925.00 |

An order may be drawn in accordance with these findings.